(No. 3248—

JOHN BERG, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1939.*
*Rehearing denied June 13, 1939.*

HINSHAW & CULBERTSON, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant, John Berg, seeks an award of Twenty-five Thousand ($25,000.00) Dollars for loss of time, medical and hospital expenses and permanent disability alleged to have

resulted from an illness caused by vaccination of claimant as a member of the Illinois National Guard. Claimant enlisted in March, 1937 in Company B, 108th Combat Engineers. He was twenty years of age, unmarried and employed as address-ograph operator at the Commonwealth Edison Company of Chicago, at a salary of Seventy-five ($75.00) Dollars per month. On June 8, 1937 claimant in company with other members of his company, underwent the required vaccination for smallpox, and also received the first injection of typhoid serum, preparatory to engaging in summer military maneuvers with his company at Camp Grant. On July 16, 1937 he noticed pains in the calves of his legs. On July 19, 1937 he was unable to go to work and was hospitalized at the Michael Reese Hospital in Chicago from July 22nd to July 28th, 1937. Dr. Chaloupka, a witness called by claimant, testified that he had known claimant for many years; that prior to July, 1937 he was in normal condition; that he was called to attend claimant at that time and found he had pain and weakness in the legs, arms and hands and that this condition progressively increased. There was no evidence in the beginning of temperature, sore throat or infection, no nausea and no evidence of gastro-intestinal trouble; that the absence of these symptoms definitely ruled out any diagnosis of polio-myelitis; that the patient's condition gradually became worse and he became weaker; that he had a perfectly normal blood count and that a spinal puncture showed negative with no albumin, no globulin and no increased cell count. A diagnosis of toxic paralysis produced by vaccination was reached by Dr. Chaloupka, in conference with Dr. Theodore Stone, the latter being connected with Passavant Hospital. Dr. Stone testified that after making a complete neurological examination of the patient he found that the latter had a paralysis of both arms and both legs with a bilateral foot drop. The patient spent about two and one-half (2½) months in bed receiving various types of treatment for his paralyzed condition. Late in the winter he was able to get out of bed but could not walk without help and was placed in a wheelchair. After about six weeks in the wheelchair that is in November, 1937 he began to walk with the aid of crutches. He was then given braces at the Michael Reese Hospital and was able to again resume part-time work on or about January 24, 1938. About March,

1938 he returned to full-time·work, continuing to wear the braces until approximately the 11th of November, 1938. At the time of the hearing on November 19, 1938 the claimant could walk by himself without braces, but only in a slow walk and could not lift the left foot more than an inch or so causing the heel of the left foot to strike the ground prematurely, by reason of what the doctor characterized as foot drop.

Up to February 12, 1938 claimant had incurred Six Hundred Ninety-five ($695.00) Dollars expenses for hospital, medical, nurses, braces, wheelchair and other incidents of his illness. This expense has all been paid or assumed by claimant and his father and none of it has been paid by the State. Part of the nurses' expense was paid by some agency unknown to claimant. He first returned to work January 24, 1938 and at the time of the hearing was receiving the same wages that he had received prior to his disability. Dr. Stone testified that patient's condition at the time of the taking of evidence might have a causal relationship with the vaccination and the conditions of July 28, 1937. He was quite positive that claimant's condition was not polio-myelitis. Dr. Stone further stated that in his opinion patient's condition as disclosed at the time of the hearing was not permanent and that this type of patient usually makes a complete recovery, as the toxins causing the condition eventually become assimilated and disappear.

A Board of Medical Officers was convened for the purpose of making an examination relative to Private Berg's disability, and to pass on the surgical and medical treatments rendered and the pay of the soldier during the period of his incapacity. The board was also directed to make recommendations relative to the necessity for medical treatment, hospitalization and payment of bills. The board met and questioned Private Berg who was accompanied by his attorney and the attending physician, Dr. Chaloupka. A complete neurological examination was also conducted by Dr. Alex S. Hershfield in the presence of the board. The Medical Board's report found that Private Berg had a physical disability, i. e. a motor involvement of both lower extremities below the knees; that he is required to wear braces from the knees down; that the difficulty at the time of said findings is the result of an attack of

acute anterior polio-myelitis; that no other factor except the infection that produces polio-myelitis is responsible for patient's condition. Thereupon the board made the following recommendation:

"In view of the belief of the Board that the present disability of Private John Berg, presents the permanent residues of an anterior polio-myelitis, which is in no way incident to or caused by the innoculation or vaccination rendered on June 8, 1937, the Board is unable to make any recommendations for further treatment, hospitalization, payment of bills for such services and pay of the soldier."

Attached to the report of the Medical Board is a report by Dr. Alex S. Hershfield in which he states that the patient's condition is due to an attack of acute anterior polio-myelitis, and that in his belief no other factor except the infection that produces polio-myelitis was in any way responsible for the patient's condition.

A motion to strike the adjutant's report was denied by the court on October 11, 1938.

While the evidence is conflicting, the greater weight thereof supports a finding that the claimant did not have anterior polio-myelitis, and that such evidence supports the diagnosis of toxic poisoning due to vaccine serum. The Attorney General in his Statement, Brief and Argument, filed herein on March 7, 1939, concedes, in fairness to the claimant, that although it does not appear as a part of the record in this case, the medical records herein filed were in fact examined by Dr. A. C. Baxter, Acting Director of the Department of Public Health, and the latter expressed the opinion that from the history of the case and from a consideration of the medical records, he concurs in the above finding.

The claimant, pursuant to an order of this court entered February 14, 1939, submitted himself to an examination by Dr. Sidney O. Levinson, Director, Samuel Deutsch Convalescent Serum Center, and Dr. Levinson is also of the opinion that the illness of the claimant was due to a reaction caused by his vaccination.

As it clearly appears that the vaccination to which claimant submitted was required of him as a member of the Illinois National Guard, and as the illness suffered by him is traceable to his military duty, his claim comes within the provisions of the *Illinois Military & Naval Code,* whereby this court is given jurisdiction to render financial assistance. Said section provides as follows:

"In every case where an officer or enlisted man of the National Guard or Naval Reserve shall be injured, wounded or killed while performing his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief, said officer or enlisted man or his heirs or dependents, shall have a claim against the State for financial help or assistance, and the State Court of Claims shall act on and adjust the same as the merits of each case may demand." *Sec. 143* (Ch. 129 Ill. Rev. Statutes).

While the evidence supports an award for temporary disability, it is not sufficient upon which to base an award for permanent disability. In addition to other relief, claimant is entitled to reimbursement for the medical care and expense incurred by reason of his illness. Such medical care and expense amounts to Six Hundred Fifty-seven ($657.00) Dollars. Claimant's average weekly wage would approximate Seventeen and 30/100 ($17.30) Dollars in the employment wherein he was engaged both before his illness and subsequent thereto. He was compelled to quit work July 19, 1937 and was unable to go back to work until January 24, 1938. Thereafter for a period of approximately two months he lost two hours per day which resulted in a decrease of pay of approximately $18.00 during the ensuing two months, after which time he went to work at full time. He has therefore apparently lost $485.10 in wages as a result of his labor, and in the opinion of the court should receive an award for that amount.

An award is therefore hereby made in favor of claimant in reimbursement of the expense incurred and wages lost as the result of the illness suffered by him in line of duty, in the total sum of One Thousand One Hundred Forty-two and 10/100 ($1,142.10) Dollars.